UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 6160**

-------------------------------------------------------X

DMBJ PRODUCTIONS,

**Docket No.:**

Plaintiff,

**COMPLAINT**

-against-

**JURY TRIAL DEMANDED**

TMZ TV, HARVEY LEVIN PRODUCTIONS,
TIME WARNER, INC., "JOHN DOE"#1 through
#20 and "JANE DOE" #1 through #20,

Defendants.

-------------------------------------------------------X

Plaintiff, by and through its attorneys, The Law Office of René Myatt,

complaining of the Defendants, respectfully alleges as follows, upon information and

belief:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims set forth pursuant to 28 U.S.C. § 1332
(a) (1) in that the amount of the controversy, exclusive of interest and costs,
exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars and complete
diversity of citizenship exists between the plaintiff and defendants. This court has
jurisdiction over Plaintiff's copyright infringement claim pursuant to 15 U.S.C. §
1121 and 28 U.S.C. §§ 1331 and 1338, and over Plaintiff's declaratory judgment
claim by virtue of the Federal Declaratory Judgment Act.

2. This Court has personal jurisdiction over the defendants pursuant to Rule 302 of
the Civil Practice Law and Rules, in that at all times relevant hereto, defendants
did, and still (i) transact business within the State of New York and/or (ii)

contracted to supply services in the State of New York and/or (iii) regularly do or

solicit business, or engage in other persistent courses of conduct, or derive

substantial revenue from goods used or consumed in the State of New York, or

expected or reasonably should have expected their acts to have consequences in

the State of New York and derive substantial revenue from interstate or

international commerce.

3.  Venue properly lies in this District pursuant to 28 U.S.C. § 1391 (a) (2) in that

jurisdiction is founded only on diversity of citizenship and a substantial part of the

events or omissions giving rise to the claim occurred in New York county.

**THE PARTIES**

4.  Plaintiff, DMBJ PRODUCTIONS (hereinafter **"Plaintiff"**), is and at all times

relevant was a company doing business, organized and existing pursuant to the

laws of the State of New York, with its principal place of business located in New

York, New York. Plaintiff is engaged in the business of selling for profit

photography, film, video he has taken and otherwise captured with the use of his

camera equipment.

5.   Defendant, TMZ TV (**"TMZ"**) is and at all times relevant was a corporation

organized and existing pursuant to the laws of the State of California. TMZ

conducts business throughout the United States and in numerous foreign countries

under the trade name TMZ and is in the business of providing entertainment news

to the general public.

2

6.  Defendant, HARVEY LEVIN PRODUCTIONS, INC. (**"LEVIN"**) is, and at all times relevant was a corporation organized and existing pursuant to the laws of the State of California. Levin conducts business throughout the United States and in numerous foreign countries and produces the defendant TMZ shows.

7.  Defendant, TIME WARNER, INC. (**"TIME WARNER"**) is, and at all times relevant was, a corporation organized and existing pursuant to the laws of the State of Delaware. TIME WARNER conducts business throughout the United States and in numerous foreign countries under the trade name Time Warner and is the parent company of defendant TMZ.

8.  Defendants, "JOHN DOE" #1 through #20 and "JANE DOE" #1 through #20 are individuals and/or entities whose true names and capacities are presently unknown to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the Defendants sued herein as "JOHN DOE" #1 through #20 and "JANE DOE" #1 through #20 was the agent, servant, and/or employees of his or her co-defendants, and, in doing the things herein mentioned, was acting within the scope of his or her authority as such agent, servant, and/or employee, and with the permission and consent of his or her co-defendants, and that each of said fictitiously named defendants is, in some manner, liable or responsible to Plaintiff based upon the facts hereinafter alleged and thereby proximately caused injuries and damages to Plaintiff as more fully alleged herein below. Accordingly, Plaintiff sues said Defendants by said fictitious names. At such time as said defendants' true names and capacities

become known to Plaintiff, Plaintiff will seek leave to amend the Complaint to

insert said true names and capacities of such individuals and/or entities.

## NATURE OF THE ACTION

9.  Under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (the

"Copyright Act"), Plaintiff has the distinct, severable and exclusive rights to,

among other things, reproduce, and publicly display its copyrighted works. 17

U.S.C. §§ 106 (1), (4), (5).

10.  TMZ is a media entity that delivers entertaining videos, films, news across the

country. Because TMZ improperly and fraudulently and without the permission of

the Plaintiff used and pirated copyrighted works owned by the Plaintiff, the video

and/or film footage shown by TMZ on its entertainment television show was

unauthorized film footage of Plaintiff's audiovisual works.

11.  Plaintiff's video/film footage of Jennifer Lopez entering a taping of the "Inside

the Actor's Studio" ("Footage) was displayed on TMZ on May 8, 2008, an

entertainment show which Defendants control and directly profit from.

12.  TMZ itself commits the infringing duplication, public performance, and public

display of Plaintiff's copyrighted works, and that infringement occurs on TMZ's

entertainment show, which is operated and controlled by the Defendants.

13.  TMZ has not received a valid license, authorization, permission or consent to use

the copyrighted works owned by Plaintiff that have appeared on TMZ and are at

issue in this action and attached as Exhibit "A" (DVD Copy of footage).

14. TMZ has willfully, intentionally, purposefully reproduced, publicly performed, and public displayed the copyrighted works, and/or knowingly facilitated, enabled, induced, and materially contributed to infringing uses thereof, and/or refused to exercise its ability to control or supervise infringing uses thereof from which it obtains direct financial benefits.

15. Defendants have actual knowledge and clear notice of this massive infringement, which is obvious to even the most casual viewer of the show. TMZ aired the footage while "rolling over" a copy of a contract Jennifer Lopez signed with TLC agreeing to participate in a reality show. Allowing anything to be "rolled over" footage is not done in this industry. What is custom in this business is that the pure footage, that is, the footage by itself is aired without any other footage, prop, anything "rolled over" the footage. The rampant infringement of Plaintiff's copyrights on TMZ is open and notorious.

16. Defendants profit handsomely from the infringement of Plaintiff's copyrighted works, and receive financial benefits directly attributable to the infringing activity.

17. Copyright owners can monitor for infringing videos only after they are aired on the show, so there is an inevitable time lag between when a video or footage is posted and the first reasonable time at which an owner can identify it and send a *take down* or *cease and desist* notice.

18. TMZ's airing of the Jennifer Lopez footage left Plaintiff unable to meaningfully protect its rights in this time sensitive medium. In this way, TMZ deprived

Plaintiff of economic returns to which it was entitled under copyright laws, thereby undermining the system of incentives that copyright provides for the creation and dissemination of new works.

19. Moreover, the defendants failed to obtain the necessary license from the Plaintiff and pay such licensing fees for use of the Lopez footage.

20. TMZ's failure to take reasonable measures to prevent infringement of Plaintiff's film footage stands in stark contrast to the protection which TMZ offers for the usage and content to which it has acquired licenses through various business partnerships and paid usage fees to other copyright holders and film owners.

21. TMZ aired the subject Jennifer Lopez film footage on May 8, 2008, during sweeps weeks, a very financially lucrative period in the television industry; and subsequent, and prior, to the airing, defendants wrongfully took numerous affirmative actions which (i) interfered with the plaintiff's business relations and opportunities, (ii) prevented Plaintiff from fully realizing its rights to exploit the film footage, (iii) resulted in unjust enrichment to the defendants at the expense of the Plaintiff, and (iv) infringed on the Plaintiff's copyright in the film footage. Moreover, Plaintiff thereafter discovered that numerous representations made by certain of the defendants, which representations caused the subject film footage to be aired without Plaintiff's knowledge or permission were knowingly false when made.

22. By way of this action, Plaintiff seeks to recover its damages (inclusive of its pecuniary loss, loss of profits, and attorneys' fees) for (i) the defendants' breaches

of their fiduciary obligations, (ii) negligent performance by defendants of their fiduciary and contracted responsibilities, (iii) the interference by the defendants in the business relations and opportunities of the Plaintiff, (iv) the fraud engaged in by certain defendants, (v) the unjust enrichment of the defendants at the expense of the Plaintiff, (vi) the infringement of the Plaintiff's copyright to the film footage, and (vii) failure of the defendants to obtain the requisite license from Plaintiff. Additionally, this action seeks equitable relief by way of (i) an accounting for the defendants' income generated as a result of the airing of Plaintiff's film footage, (ii) a declaratory judgment as to Plaintiff's rights to exploit the film footage in any and all formats.

## CLAIMS FOR RELIEF

### COUNT I (Direct Copyright Infringement-Public Performance)

23. Plaintiff repeats, reiterates and realleges each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

24. Defendants, without the permission or consent of Plaintiff, and without authority, have publicly performed Plaintiff's copyrighted visual works. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to publicly perform their copyrighted visual works.

25. Defendants, without permission or consent of Plaintiff, and without authority, failed to obtain the requisite license from Plaintiff prior to airing the film footage.

Defendants, in effect, aired film footage that was not licensed to them, and as a result failed to compensate Plaintiff for such usage.

26. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of the Plaintiff.

27. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504 (c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504 (b), Plaintiff shall be entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

28. Plaintiff is entitled to his costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT II (Direct Copyright Infringement-Public Display)

29. Plaintiff repeats, reiterates and realleges each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

30. Defendants, without permission or consent of the Plaintiff, and without authority, publicly displayed and purposed to authorize the display of Plaintiff's copyrighted visual works. Defendants caused these works to be publicly displayed by showing individual images of the infringing video on its TMZ TV. Defendants' conduct

constitutes direct infringement of the Plaintiff's exclusive rights under the Copyright Act to publicly display its copyrighted visual works.

31. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

32. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504 (c).

## **COUNT III (Unlicensed Use)**

33. Plaintiff repeats, reiterates and realleges each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

34. Defendants, without authority, aired the subject footage, which was owned by the Plaintiff, without first obtaining a license or otherwise obtaining permission and consent for such use. Defendants' conduct constitutes direct violation of Plaintiff's exclusive rights to his visual work.

35. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

36. As a direct and proximate result of Defendants' violation of Plaintiff's ownership rights, Plaintiff is entitled to the maximum monetary damages for said violation.

37. Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

38. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyright.

## COUNT IV (Negligence, As Against All Identified Defendants)

39. Plaintiff repeats, reiterates and realleges each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

40. Defendants, and each of them, owed a duty of care to act as reasonably prudent members of the entertainment community to carry out the terms and conditions of obtaining licenses agreements with due diligence, with proper care, and in a timely manner.

41. Plaintiff is informed and believes, and based thereon alleges, that defendants, and each of them, knew, reasonably should have known of, or should have been able to carry out, their obligations as would other similarly-situated people in the entertainment industry with similar experience, in a timely manner and in good

faith, so as to obtain a license from Plaintiff so that the revenues of all parties could be maximized.

42. Plaintiff is further informed and believes, and based thereon alleges that the above-described damages arose out of, or were attributable to, and were caused by, defendants' negligent acts in that defendants and/or their agents failed to exercise that degree of care required under the circumstances and ordinarily exercised by similarly situated individuals under similar circumstances.

43. As a result of the negligence of defendants, and each of them, Plaintiff has been damaged in an amount which is not presently capable of precise calculation, but which amount is believed to be in excess of Five Hundred Thousand ($500,000.00) Dollars.

### COUNT V (Unjust Enrichment, As Against All Identified Defendants)

44. Plaintiff repeats, reiterates and realleges each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

45. During "sweeps weeks," beginning on or about May 8, 2008, Defendants aired the subject film footage without the consent or approval of the Plaintiff.

46. In their failure to obtain said license, Defendants have failed and/or refused to negotiate with Plaintiff for the payment of such airing and violation thereof. Defendants have retained for themselves all of the income generated as a result of the subject film's airing.

47. Unless defendants are directed to account for the proceeds of all such sales, Plaintiff has no reasonable manner of determining the amount thereof and, therefore, has no adequate remedy at law.

48. Unless defendants are directed to account for the income generated as a result of the subject film's airing, and to pay Plaintiff fifty percent (50%) thereof, defendants, and each of them, shall be unjustly enriched, and Plaintiff will be damaged in a sum to be established at the time of the accounting by defendants, or to otherwise be proven at the time of trial.

## COUNT VI (Fraud as Against Defendants TMZ and Levin)

49. Plaintiff repeats, reiterates and realleges each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

50. The representations made to Plaintiff, as hereinabove set forth, were made by telephone in New York or in Los Angeles, by agents of Defendants TMZ and Levin.

51. Said representations were false when made, known by the declarant to be false, and were made with the intent to defraud Plaintiff.

52. As a direct and proximate cause of the fraud of the said defendants and each of its agents, Plaintiff has suffered damages in an amount in excess of $500,000.00.

53. The agents of the said defendants, and each of them, have at all times acted with full knowledge and awareness that their conduct was causing and would continue to cause serious injury and damage to the Plaintiff, and did the things herein alleged with the intent to inure Plaintiff in its business. Said acts were despicable, were done willfully, fraudulently, maliciously, and oppressively, with wanton disregard for the rights of Plaintiff, and by reason thereof, Plaintiff is entitled to exemplary and/or punitive damages against said Defendants.

## COUNT VIII (Declaratory Relief)

54. An actual controversy has arisen between Plaintiff and Defendants concerning whether Plaintiff is entitled to full and complete compensation as a result of the Defendants' actions.

55. Plaintiff is the owner of the subject film footage. As a result, Plaintiff has any and all ownership rights now or hereafter recognized in any territory, including the exclusive right to adapt and/or change the format of the subject film footage.

56. Based thereupon, Plaintiff contends (and Defendants have previously admitted) that Plaintiff owns the subject film footage and has the right to exploit it in any format.

57. Defendants, however, attempted to claim ownership by displaying Plaintiff's footage and "rolling" a copy of a contract Jennifer Lopez entered into with TLC for a reality show "over" Plaintiff's work and calling it their own.

58. That position by Defendants, however, fails to consider the clear industry-standard of obtaining the permission and consent of the owner of the film footage and paying said owner for such use. The Defendants are well aware of this fast-paced business and that with the advent of ever-advancing modern technology everything is instant in this field. Accordingly, when a photographer such as the Plaintiff herein shoots footage that is then licensed for sale to various entertainment shows, the Defendants are aware that the integrity of the business cannot fair well when Defendants seek to eliminate Plaintiff's rights, exploit his footage and refuse to pay him for said usage.

59. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties to license the film footage in any format, as well as other forms of exploitation.

**WHEREFORE,** Plaintiff respectfully demands judgment against the Defendants, jointly and severally (unless otherwise indicated), as follows:

1.  Upon the FIRST Count hereinabove, a money judgment in the amount of Five Hundred Thousand (500,000.00) Dollars, or such other amount as is proved at the trial of this action;

2.  Upon the SECOND Count, hereinabove, a money judgment in the amount of Five Hundred Thousand ($500,000.00) Dollars, or such other amount as is proved at the trial of this action, together with punitive damages in such amount as is deemed appropriate by the trier of fact;

3.  Upon the THIRD Count, hereinabove, a money judgment in the amount of Five Hundred Thousand ($500,000.00) Dollars, or such other amount as is proved at the trial of this action, together with punitive damages in such amount as is deemed appropriate by the trier of fact;

4.  Upon the FOURTH Count, hereinabove, a money judgment in the amount of Five Hundred Thousand ($500,000.00) Dollars, or such other amount as is proved at the trial of this action;

5.  Upon the FIFTH Count, hereinabove, (i) directing the defendants to account to Plaintiff for the income derived from the airing of the Jennifer Lopez film footage, and (ii) awarding a money judgment to the Plaintiff in the amount of fifty percent (50%) of such income;

6.  Upon the SIXTH Count, hereinabove, (i) a money judgment in an amount equal to the greater of (a) the profit derived by the defendants from the income derived from the airing of the film footage, (b) the actual damages incurred by Plaintiff, or ( c ) statutory damages for each infringement; (ii) an Order directing defendants to turn over to Plaintiff, for destruction, all film footage which remains in their possession; (iii) an Order permanently enjoining the defendants from airing the film footage without the express prior written permission of Plaintiff; (iv) punitive damages in such amount as is deemed appropriate by the trier of fact; (v) reasonable attorneys' fees and costs of this suit;

7. Upon the SEVENTH Count, hereinabove, a Judgment declaring that the Plaintiff has the exclusive right to license the subject film footage in any format, as well as other forms of exploitation.

8. Upon all Counts hereinabove, the costs and taxable disbursements of this action, including reasonable attorneys' fees where permitted by law, together with such other, further and different relief as to the Court may seem just, proper and equitable in the premises.

Dated:     Hollis, New York
           June 30, 2008

THE LAW OFFICE OF RENÉ MYATT

RENÉ MYATT, ESQ. [RM4406]

Attorney for Plaintiff

204-04 Hillside Avenue, 2nd Floor

Hollis, New York 11423

(718) 468-3588

16